UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILIP R. KIMBALL, as Administrator of the Estate of CARLA M. KIMBALL,

      Plaintiff,

v.

RJ REYNOLDS TOBACCO CO.,

      Defendant.

CASE NO. C03-664JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on eleven motions in limine (Dkt. ## 84-87, 91, 93-98) from Defendant R.J. Reynolds Tobacco Company ("RJR") and a single motion in limine (Dkt. # 92) from Plaintiff Phillip Kimball. For the reasons stated below, the court grants and denies these motions.

## II. BACKGROUND

The court summarized this action and the facts underlying it in its February 25, 2005 order (Dkt. # 63, "Order") granting and denying RJR's motions for summary judgment. The court will not repeat its summary here, but notes that Mr. Kimball is the widower of Carla Kimball, who died in March 2001 of lung cancer. Mr. Kimball alleges that cigarettes that RJR manufactured are the cause of his wife's death.

ORDER – 1

Since the Order, Mr. Kimball has had two claims pending in this litigation. Both claims seek to recover against RJR on the theory that RJR's allegedly unsafe cigarettes caused Ms. Kimball's cancer. For any unsafe cigarettes manufactured before 1981, Mr. Kimball's claim is for negligence. For unsafe products manufactured after 1981, Mr. Kimball's claims fall under the Washington Product Liability Act ("WPLA"), which preempts common law product liability claims.[1]

Thus narrowed, Mr. Kimball's two remaining claims have awaited trial for more than a year. Now, in the guise of "motions in limine," RJR seeks to substantially pare those claims. The court has never before needed to remind a party that a motion in limine is substantially different than a dispositive motion. RJR's conduct, however, demands a different approach.

A motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary, 1038 (8th Ed. 2004). Some of RJR's motions meet this definition. At least half of them clearly do not. In this court, parties must generally file motions in limine a few weeks before trial, and they become ripe no later than two weeks after their filing. Dispositive motions, by contrast, are due at least 90 days before trial, and become ripe at least four weeks after their filing. The court's scheduling orders give it ample time to consider dispositive motions. The court's scheduling orders give it very little time to consider motions in limine.

Competent counsel represent RJR in this matter. The court assumes that counsel is aware of the differences between dispositive motions and motions in limine. The court is thus surprised and disappointed to find numerous dispositive motions pending only

---

[1] The WPLA took effect on July 26, 1981. Van Hout v. Celotex Corp., 853 P.2d 908, 910 (Wash. 1993).

ORDER – 2

days before trial.  RJR apparently believes that it can transform a motion for dispositive relief into a motion in limine simply by stating that once the court throws out the claim or theory that is the focus of the motion, the court should exclude evidence that is relevant to that claim or theory.  Under this logic, RJR is free to ignore the deadline for dispositive motions and bring "motions in limine" at its leisure.  The absurdity of RJR's position compounds when the court considers that RJR brought a motion in limine regarding its assumption of the risk defense in early November 2005 (Dkt. # 77).  In that motion, RJR explained that it brought the motion early because "fundamental fairness" required that it know the scope of its defenses well in advance of trial.  Apparently, the same "fundamental fairness" does not extend to efforts to dramatically pare Mr. Kimball's claims days before trial.

With a long-delayed trial set to begin in less than a week, the court declines to provide an analysis of each of RJR's dispositive requests.  Instead, the court provides the following summary of the claims and defenses the jury will hear at trial.  The summary includes only those defenses that are relevant to the disposition of the motions in limine.  The court will conclude this order with summary dispositions of the parties' motions in limine along with RJR's thinly-veiled dispositive motions.

### III.  SUMMARY OF TRIABLE CLAIMS AND DEFENSES

**A.   Mr. Kimball's Claims**

**1.   Failure to Warn (Under Both WPLA and Negligence Theories)**

A failure to warn about the dangers of a product can support both a WPLA claim and a negligence claim.  RJR raises several arguments against Mr. Kimball's failure to warn allegations.  The most substantial is its argument that failure to warn claims are expressly preempted by the 1969 Federal Cigarette Labeling and Advertising Act ("Labeling Act").  The court rejected this argument a year ago, and the time for

ORDER – 3

reconsideration is long past. As long as Plaintiff can prove that RJR failed to warn consumers of the dangers of its products through channels outside of "packaging, advertising, and promotional material," the Labeling Act does not preempt the claim. Rivera v. Phillip Morris, Inc., 395 F.3d 1142, 1148 (9th Cir. 2005). In Rivera, the Ninth Circuit construed the preemptive effect of the Labeling Act "fair[ly] but narrow[ly]," and held that not all communications between a tobacco company and its consumers are advertising and promotion. Id.

RJR's second argument is that Mr. Kimball never pleaded or otherwise raised a failure to warn claim. The court has reviewed the record and finds no evidence that Mr. Kimball pleaded or otherwise raised any failure to warn claim except one based on RJR's failure to warn customers regarding light cigarettes. The court finds that RJR would suffer prejudice if forced to defend against a broader failure to warn claim now. In particular, the jury will not hear a failure to warn claim based on RJR's alleged failure to warn Ms. Kimball about the dangers of cigarettes before the Labeling Act took effect in 1969.

### 2. Negligence Claims

None of RJR's motions directly challenge Mr. Kimball's pre-1981 negligence claims except to the extent they rely on a failure to warn theory. The court therefore reiterates its summary judgment order: Mr. Kimball can bring a traditional negligence claim against RJR, but cannot prevail unless he proves that Ms. Kimball's use of RJR products before July 1981 was a cause of her lung cancer.

### 3. WPLA Claims

As the court acknowledged in its summary judgment order, Mr. Kimball can prove his defective design claim under either the risk-utility test or the consumer expectations test.

ORDER – 4

### a. Risk Utility

As the court has already held, the jury must decide whether Mr. Kimball can prove a design defect under the risk-utility test. To do so, he must prove that "the likelihood and seriousness of harm caused by the product outweighed the manufacturer's cost and opportunity to design a product that would not have caused that harm." <u>Bruns v. PACCAR, Inc.</u>, 890 P.2d 469, 474 (Wash. Ct. App. 1995).

RJR makes two arguments to limit Mr. Kimball's claim under the risk-utility test. First, it argues that Mr. Kimball must prove that an alternative cigarette design would have prevented Ms. Kimball from acquiring lung cancer, as opposed to merely decreasing the risk that she would acquire lung cancer. The court finds no merit in this position. The jury may fairly infer from evidence of reduced risk that Ms. Kimball would not have acquired lung cancer if she had switched to a different cigarette design.

Second, RJR argues that Mr. Kimball cannot present evidence of alternative cigarette designs that are "not cigarettes" or are safer only because no one would use them. RJR raises an interesting question, but it is one that the jury must decide. What is a cigarette? Is it a "Nicotine-Delivery Device," as the Food and Drug Administration proposed in <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 129 (2000)? Is it a product for inhaling burning tobacco? Some combination of the two? Something else entirely? These questions are important, because Mr. Kimball cannot point to an entirely different product as an alternative design. Cf. <u>Ruiz-Guzman v. Amvac Chem. Corp.</u>, 7 P.3d 795, 800 (Wash. 2000) ("If another product can more safely serve the same purpose as the challenged product at a comparable cost and in a similar manner, a jury should be able to conclude that the risks of the challenged product outweigh its utility."). For example, a plaintiff injured in a motorcycle accident cannot argue that if the manufacturer had installed four wheels on the motorcycle, it would have been safer. "Two-

ORDER – 5

wheeledness" is an essential characteristic of a motorcycle. What are the essential characteristics of a cigarette? The court can only hypothesize. The jury will decide the issue, and will thus decide whether any alternative design that Mr. Kimball proffers is a feasible alternative.

### b.     Consumer Expectations

RJR contends that the court "[i]mplicitly [r]ecognized" that Mr. Kimball was not alleging a WPLA claim under the consumer expectations test. This is a curious interpretation of the court's order in light of the court's express determination that Mr. Kimball had presented a triable claim under the consumer expectations test. Order at 9. The court reiterates that determination here.

Alternatively, RJR contends that the court did not consider whether a WPLA claim based on the consumer expectations standard was preempted under a "conflict preemption" theory. The court has now considered the issue. Conflict preemption does not bar a WPLA claim based on the consumer expectations test.

### 4.     Ms. Kimball's Injuries

Mr. Kimball contends that RJR's products caused his wife's lung cancer. Lung cancer is the only compensable injury in this action. The parties agree that if Ms. Kimball was addicted to cigarettes,[2] any claim to recover damages for her addiction is time-barred.

RJR goes much too far, however, in requesting that the court bar all "evidence and argument regarding addiction."[3] Plaintiff is free to present evidence and argument

---

[2] RJR contends that there is no factual basis for concluding that Ms. Kimball was addicted to cigarettes. RJR is free to present the jury with evidence supporting this argument.

[3] In making this argument, and at several other locations in its motions, RJR quotes the court's statement in its prior order that "Plaintiff does not allege that cigarettes are defectively designed because they are 'tobacco products' that contain nicotine . . . ." Order at 15. In every

ORDER – 6

regarding addiction to the extent he is supporting a claim that RJR's cigarettes posed an unreasonable risk of lung cancer in part because of their addictive qualities. For example, under the risk-utility test, he may argue that the likelihood of acquiring lung cancer from a more addictive cigarette outweighed the cost and opportunity to design a less addictive cigarette. Under the consumer expectations test, he may argue that RJR's cigarettes were more dangerous than a reasonable consumer would expect because a reasonable consumer would not expect that the cigarettes were as addictive as they were, and thus could not gauge the magnitude of the risk of lung cancer.

**B.     RJR's Common Knowledge Defense**

As an affirmative defense, RJR seeks to establish that it cannot be liable for Ms. Kimball's death because Ms. Kimball "assumed the risk of smoking cigarettes in the face of the well-known, and actually-known, health risks associated with smoking cigarettes." Pretrial Order at 2. The court will refer to this argument as the "common knowledge" defense.

The court notes that "common knowledge" about generalized "health risks" is of minimal relevance. Ms. Kimball died of lung cancer. That the "health risks" of smoking are allegedly common knowledge is of little importance if the risk of lung cancer is not common knowledge. See Rivera, 395 F.3d at 1152-53 (noting same issue under Nevada law). The parties have fixed time limits in which to present their cases, and should gauge the value of presenting evidence of generalized health risks accordingly.

---

instance, RJR wrongly interprets this sentence. The court simply noted that Plaintiff had not alleged that tobacco products or nicotine-containing products as a class were per se defective. It is for this reason that Plaintiff's claims are not conflict preempted. Nothing prevents Plaintiff, however, from alleging that RJR could design its tobacco products or nicotine-containing products more safely.

ORDER – 7

In relying on the common knowledge defense, RJR opens a wide door through which a host of otherwise inadmissible evidence may pass. When the court granted summary judgment against Mr. Kimball's fraud and conspiracy claims, it noted that Mr. Kimball could not prove that his wife had heard or seen a vast array of allegedly fraudulent statements from RJR and other tobacco companies. In arguing that the risks of smoking are "common knowledge," RJR apparently seeks to go beyond evidence of what Ms. Kimball actually saw or heard and offer evidence of what "everyone" knows about smoking.

If RJR can offer evidence about "common knowledge," however, so can Mr. Kimball. For example, if RJR wishes to argue that it is common knowledge that smoking is generally harmful, Mr. Kimball can introduce evidence regarding the role of smoking in causing or exacerbating diseases other than lung cancer.[4] Moreover, Mr. Kimball is not limited to evidence regarding RJR's public statements in determining common knowledge. If Mr. Kimball has evidence that other tobacco companies or any other source contributed to common knowledge about the risks of smoking, the jury may hear the evidence.

There are limits, however, to the common knowledge defense. First, the court holds that the defense relates solely to <u>factual</u> representations about the health risks (or benefits) of cigarette smoking. The court will not permit either party to introduce advertisements that portray smoking in a glamorous or other favorable light, unless those

---

[4] While federal law preempts common law claims predicated on a tobacco company's obligation to do more through advertising or promotion, it does not limit a plaintiff's right to present rebuttal evidence when a tobacco company uses "common knowledge" as a shield. Thus, while RJR is free to present evidence of warning labels on tobacco packaging as evidence of common knowledge, Mr. Kimball can rebut such evidence by showing that other sources of common knowledge contradict or undermine the warning labels.

ORDER – 8

advertisements contain representations of fact that might have formed "common knowledge." As an example, the court would not permit either party to introduce an advertisement featuring the Marlboro Man as evidence of common knowledge. A picture of the Marlboro Man under a statement that "Smoking Does [or Does Not] Cause Lung Cancer," however, would be admissible as evidence of common knowledge.

Second, the relevant common knowledge is what was known to a person in Ms. Kimball's position. Thus, the parties' evidence of common knowledge should relate to the years in which Ms. Kimball smoked. The parties concede that Ms. Kimball stopped smoking by 1990.

Finally, the common knowledge defense applies differently when considering the common knowledge of children. It appears that Mr. Kimball intends to offer evidence regarding Ms. Kimball's smoking while she was a minor. Ultimately, this evidence is relevant only if Mr. Kimball can establish that her smoking as a minor was a cause of her lung cancer. It is not clear that Mr. Kimball has such evidence. The court therefore directs Mr. Kimball, by the opening of trial, to either submit a pleading stating that he will not argue that Ms. Kimball's smoking as a minor caused her lung cancer, or to submit an offer of proof that demonstrates how he will link her smoking as a minor to her lung cancer 40 years later. Unless the court finds the offer of proof sufficient, the court will not permit argument from either party regarding Ms. Kimball's smoking as a minor. This ruling will not prevent Mr. Kimball from offering evidence of when Ms. Kimball started smoking, and how heavily she smoked.

If Mr. Kimball has evidence from which a jury could infer that Ms. Kimball's childhood smoking was a cause of her cancer, then RJR may offer evidence that she assumed the risk of smoking as a youth because the risk was "common knowledge." If RJR intends to argue that the "common knowledge" of children in the 1950s and early

ORDER – 9

1960s was that smoking was harmful, then the court will give Mr. Kimball wider latitude in presenting evidence of what might have shaped a minor's knowledge. In particular, while the court will not permit the inference that a televised commercial featuring characters from the animated series "The Flintstones" smoking RJR's cigarettes and singing RJR's jingle would influence the "common knowledge" of an adult, a jury could infer that a child would be unable to distinguish advertising from fact. Under Washington law, a jury must consider a child's age, intelligence, and experience in deciding whether a child has assumed a risk. See, e.g., Boyer v. Northern Pac. Coal Co., 68 P. 348, 349 (Wash. 1902) ("There can be no fixed period when a minor may be held, as a matter of law, to appreciate danger which may surround him."); Kelley v. Sch. Dist. No. 71, 173 P. 333, 335 (Wash. 1920) (finding it "doubtful" that a child of "tender years could in any event be held to the doctrine of assumption of risk").

**C.    The Relevance of Cigarette Advertisements at Trial**

Many of RJR's motions in limine are directed at preventing Mr. Kimball from offering evidence of tobacco advertisements. Because the court has ruled that, in general, advertisements are not relevant to "common knowledge," Mr. Kimball may not introduce them for that purpose.

Evidence of advertising may, however, be relevant for other purposes. As the court has already noted, if the advertising contains factual representations about the risks of smoking (other than the mandatory warning label), then it may be admissible. In addition, if the advertising demonstrates an alternative cigarette design, then it may be admissible.

**D.    The Admissibility of the Testimony of Dr. Michael Cummings**

Dr. Cummings, like all other witnesses, is subject to the limitations the court has already discussed. RJR mounts several additional challenges to his testimony.

ORDER – 10

The court finds that Dr. Cummings is qualified to offer most of the opinions he intends to offer at trial. The court also finds that most of his opinions are sufficiently reliable to be admissible. The court finds that many of the alleged weaknesses in Dr. Cummings' opinions are subjects for cross-examination, not a basis for excluding Dr. Cummings' testimony. With those general notes in mind, the court offers the following guidelines.

Dr. Cummings' alleged bias against tobacco companies is no basis for excluding any of his testimony. RJR can inquire about his bias when he takes the witness stand.

Mr. Kimball concedes that Dr. Cummings is not qualified to opine regarding the cause of Ms. Kimball's cancer. It follows that Dr. Cummings is not qualified to opine that Ms. Kimball would have avoided cancer by switching to an alternative cigarette design in the late 1970s or early 1980s. Dr. Cummings may, however, testify regarding the reduced risk of cancer associated with alternative designs.

Dr. Cummings may testify regarding his extensive knowledge of tobacco industry documents that reveal industry knowledge regarding the risks of smoking, alternative cigarette designs, and other issues relevant to this action. In this area, Dr. Cummings' expertise comes from decades spent reviewing such documents.

Dr. Cummings is not qualified to design cigarettes, but he appears to have valuable knowledge regarding the industry's historical knowledge of cigarette design alternatives and alternative cigarette technologies. Dr. Cummings may offer testimony regarding that knowledge, and may discuss the risks and benefits of the alternative designs and technologies. In particular, Dr. Cummings may testify regarding the benefits, risks, and feasibility of the "Premiere" and "Eclipse" cigarette designs.

Dr. Cummings may testify regarding "common knowledge" about the risks of cigarette smoking over Ms. Kimball's lifetime. If he does so, however, he must be

ORDER – 11

mindful of the court's admonition that advertising is not generally a component of common knowledge about the risks of smoking.

Finally, Dr. Cummings may not opine regarding whether Ms. Kimball was addicted to cigarettes, whether Ms. Kimball assumed the risk of using cigarettes, and whether Ms. Kimball would have used an alternative cigarette product.

### IV.  SUMMARY DISPOSITION

The court's summary of the disposition of each of the motions in limine should be read in conjunction with the above summary of the issues remaining for trial.

The court GRANTS in part and DENIES in part RJR's motion to exclude Dr. Cummings' testimony (Dkt. # 98), subject to the limitations the court discussed above.

The court DENIES RJR's motion to exclude evidence or argument regarding addiction (Dkt. # 84), except that Mr. Kimball may not argue that Ms. Kimball's alleged addiction to cigarettes is a compensable injury.

The court GRANTS RJR's motion regarding federal preemption (Dkt. # 91) as to all failure to warn claims except one based on "light cigarettes."  Mr. Kimball may not rely on RJR's inadequate "advertising or promotion" after 1969 to support his failure to warn claim.  The court DENIES the motion to the extent that Mr. Kimball may support a failure to warn claim based on RJR's duty to warn of cigarette dangers through channels other than "advertising or promotion."

The court DENIES RJR's motion regarding the consumer expectations test (Dkt. # 87).

The court DENIES RJR's motion to exclude evidence of certain alternative cigarette designs (Dkt. # 97).

The court DENIES RJR's motion regarding allegedly irrelevant evidence (Dkt. # 95).  Mr. Kimball may offer evidence regarding public representations about the risks

ORDER – 12

of cigarette smoking to rebut evidence from RJR that the risks of smoking were "common knowledge."

The court DENIES RJR's motion regarding diseases other than lung cancer (Dkt. # 94). To the extent that RJR argues that the general health risks of smoking were "common knowledge," Mr. Kimball may offer evidence and argument regarding "common knowledge" about the relationship between smoking and other diseases.

The court GRANTS RJR's motion regarding youth marketing (Dkt. # 86) to the extent that it excludes evidence of marketing to youth at times other than during Ms. Kimball's childhood. The court DENIES the motion as it applies to evidence of marketing to youth during Ms. Kimball's childhood, although the court will reconsider this issue depending on Mr. Kimball's offer of proof regarding the role of Ms. Kimball's childhood smoking in causing her lung cancer.

The court GRANTS RJR's "omnibus" motion (Dkt. # 96) to exclude various allegedly irrelevant or unduly prejudicial evidence. Mr. Kimball has agreed not to offer such evidence.

The court GRANTS RJR's motion to exclude the "Corporate Activity Project Memo" (Dkt. # 93), as Mr. Kimball has agreed not to use the document, or to seek leave of court before doing so.

The court GRANTS RJR's motion to exclude the portion of Ms. Kimball's death certificate that states the cause of her death (Dkt. # 85). Mr. Kimball has consented to the exclusion.

The court GRANTS Mr. Kimball's sole motion in limine (Dkt. # 92), as it is essentially unopposed. RJR may not offer evidence or argument regarding the lives of Ms. Kimball's adult children. One issue requires additional discussion. RJR suggests that by mentioning evidence "linked" to Dr. William Waltner, Ms. Kimball's treating

ORDER – 13

physician, Mr. Kimball will open the door to RJR's introduction of evidence regarding Dr. Waltner's discipline and ultimate suspension from the practice of medicine. Dr. Waltner's disciplinary history has little bearing, if any, on any relevant issue. Moreover, the court finds that the potential for unfairly prejudicing the jury or wasting its time greatly outweighs the marginal relevance of his disciplinary history. Barring extraordinary circumstances, RJR may not introduce evidence regarding discipline against, or suspension of, Dr. William Waltner, even if Mr. Kimball mentions evidence "linked" to Dr. Waltner.[5]

The court directs the parties to file their trial briefs and proposed jury instructions no later than 10:00 a.m. on May 1, 2006.

Dated this 26th day of April, 2006.

JAMES L. ROBART
United States District Judge

---

[5] For example, Dr. Cummings may note that he relied on Ms. Kimball's medical records, which would include evidence "linked" to Dr. Waltner. RJR may not then inquire about Dr. Waltner's unrelated improprieties.

ORDER – 14